IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM A. WHITE, # 13888-084, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 17-cv-683-JPG |
| ) | |
| UNITED STATES of AMERICA, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff is a federal inmate currently incarcerated at the USP-Marion. In this *pro se* action, he seeks relief under the Federal Tort Claims Act under several theories, including assault/battery and negligence causing physical injury; intentional infliction of emotional distress, and negligent infliction of emotional distress. Plaintiff's claims arise from a number of incidents in different locations and institutions. The first followed Plaintiff's arrest in October 2008, and the most recent occurred on June 8, 2015. (Doc. 8, pp. 26, 32). This case is now before the Court for a preliminary review of the First Amended Complaint[1] pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

---

[1] Plaintiff submitted his original Complaint on June 28, 2017, initiating the present action. (Doc. 1, p. 29). Before the Court completed its threshold review of that pleading, Plaintiff submitted his First Amended Complaint (Doc. 8), which was filed of record on August 7, 2017.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

### The First Amended Complaint (Doc. 8)

Plaintiff asserts tort claims based on actions by employees of the United States Marshals Service ("USMS") and the Bureau of Prisons ("BOP"), on the following theories: assault and battery (by torture and intentional infliction of physical injury; negligence causing physical

injury; intentional infliction of serious emotional distress; negligent infliction of emotional distress; and "loss of normal life." (Doc. 8, p. 26). Along with the First Amended Complaint, Plaintiff filed a brief in support of his pleading. (Doc. 8-1).

Plaintiff's claims arise from the following events.

On October 17, 2008, Plaintiff was arrested based on an informant's report (which Plaintiff asserts was false) to the United States Marshals Service that Plaintiff was building a truck bomb to target then-candidate Barack Obama during a campaign stop in Roanoke, Virginia. (Doc. 8, p. 27). While in the custody of the USMS between October 17 and 23, 2008, Plaintiff was housed in a bare 7'x7' room with no exterior window, under a constant bright light, and was deprived of sleep and hygiene. Plaintiff describes these conditions as "Restricted Environmental Stimuli" ("RES"),[2] and asserts that prolonged exposure to these conditions causes physical brain damage. (Doc. 8, pp. 27-28).

Between October 23 and December 29, 2008, Plaintiff continued to be exposed to RES conditions by the USMS at 3 locations – the Roanoke, Virginia, City Jail; the Oklahoma City Transfer Center, and the Metropolitan Correctional Center in Chicago ("MCC-Chicago").

From November 7 to November 11 or 12, 2008, Plaintiff was held in an unheated cell at the MCC-Chicago SHU with no linens or blankets. The outside temperature was -20˚F. Plaintiff survived by wrapping a mattress around his body, but suffered extreme pain from the cold.

On November 28, 2008, Plaintiff's cell was flooded with feces to a depth of about 1", and this condition persisted for over 24 hours. Between November 7 and December 29, 2008, Plaintiff spent 21 days in a cell that was "overrun" by cockroaches. (Doc. 8, p. 28). During this time, Plaintiff was exposed to viewing "extreme acts of violence" perpetrated by officers against

---

[2] Plaintiff later defines RES as "any confinement in 150 sq. ft. of space, or less, for 23 or more hours per day." (Doc. 8, p. 33).

3

other inmates. All these events apparently occurred at the MCC-Chicago. Plaintiff clarifies in his accompanying brief that he was in the custody of the USMS during this period. (Doc. 8-1, p. 9).[3]

In May 2009, Plaintiff was housed in the SHU at MCC-Chicago for 10 days, and subjected to RES conditions. (Doc. 8, p. 29). He was still in USMS custody at the time.

On or about September 1, 2010, while Plaintiff was housed at FCI-Beckley, he was again exposed to RES conditions after being placed in the SHU in that institution. *Id.* Plaintiff was in the custody of the Bureau of Prisons at that time. (Doc. 8-1, pp. 5, 9). Between September 1 and December 9, 2010, Plaintiff "developed symptoms of RES-related neurological damage." (Doc. 8, p. 29). These symptoms included seeing a "black fuzzy object," having intrusive thoughts, ceasing to have regular sleep/wake cycles, having waking dreams, and losing the ability to consistently communicate intelligently. Plaintiff's family brought these symptoms to the attention of the BOP, but his conditions of confinement were unchanged.

On December 9, 2010, Plaintiff was transferred to the MCC-Chicago, where he continued to experience the above symptoms. On December 22, 2010, Plaintiff was placed into the SHU because of his symptoms. He was again exposed to RES, and his symptoms worsened until he would sit and stare at the wall, unaware of his surroundings. After 10 days, Plaintiff "was awakened into an excited delirium," and began to cut his stomach, write on the walls in blood, and destroy the property in the room. *Id.*

On April 20, 2011, Plaintiff was released from federal custody "in a state of delirium [and] confusional psychosis." He was unable to resume normal life. He closed his business, divorced, and continued to have severe symptoms of insomnia, visions, waking nightmares,

---

[3] Plaintiff states that the BOP "is only liable for injuries (e)-(g), which were caused by acts while I was within their custody." (Doc. 8-1, p. 9). Paragraphs (e)-(g) cover events commencing on September 1. 2010. (Doc. 8-1, p. 5).

4

confusional psychosis, delirium, and dissociation until September 2011. His symptoms then moderated for a time but resumed their severity on or about February 2012. (Doc. 8, p. 30).

Plaintiff was re-arrested in Mexico on June 8, 2012. He was in the custody of the USMS and the BOP, and was housed at FDC-Miami. (Doc. 8, p. 30, ¶ 20). He was kept in the SHU from June 9 to about July 26, 2012, where he was subjected to RES conditions.

On or about July 26, 2012, and in August 2012, Plaintiff was transported by the USMS in black box restraints, which caused physical pain. Plaintiff was housed during that period in RES conditions in the SHU at the OKFTC.[4] (Doc. 8, p. 30).

Between January 7 and January 14, 2013, Plaintiff was again subjected to painful black box restraints and housed in RES conditions at the OKFTC. Between January 23 and 26, 2013, Plaintiff was housed in the SHU at MCC-Chicago under RES conditions. From June 10-12, 2013, Plaintiff was housed in RES conditions in the SHU at FDC-Philadelphia and then at FCI-Petersburg.

On May 13, 2014, Plaintiff was transferred to the custody of the USMS for the Middle District of Florida, and was housed in the John E. Polk Correctional Facility in the custody of the Seminole County, Florida, Sheriff. (Doc. 8, p. 30). On May 20, 2014, Plaintiff was "tortured" by the Sheriff by being placed under 2 constant, painfully bright lights, which shone through a towel folded 4 times over. The lights caused Plaintiff to suffer extreme physical pain in his head and eyes. He was unable to sleep for more than an average of 72 minutes per day during the 192-day period from May 20 to November 30, 2014. Plaintiff asserts that this treatment by the Sheriff was carried out at the direction of the USMS. *Id.* During this same time period, the Sheriff broadcast video of Plaintiff throughout the facility, including to other inmates and visitors, causing emotional distress to Plaintiff.

---

[4] The Court presumes the acronym "OKFTC" refers to the Oklahoma City Transfer Center.

From June 17 to June 23, 2014, because of the Sheriff's bright-light treatment, Plaintiff entered a delirium and dissociative state. He was unable to eat or drink, and physically collapsed with dry heaves. Medical attention for these symptoms was delayed by 12 hours. (Doc. 8, p. 30).

From December 23, 2014, to January 9, 2015, Plaintiff was subjected to the painful black box restraints while in transit. This caused a wrist injury which took 2 months to heal. He was again held under RES conditions in the OKFTC. (Doc. 8, p. 31).

From January 9 to March 3, 2015, Plaintiff was housed in the SHU at FCI-Loretto and on lockdown at the USP-Canaan, where he was exposed to RES conditions.

From April 21 to April 30, 2015, Plaintiff was again painfully black-boxed in transit. He was subjected to RES conditions at FTC-Oklahoma. (Doc. 8, p. 32).

On June 8, 2015, Plaintiff was black-boxed in transit from the USP-Marion. *Id*.

On February 6, 2016, Dr. Eric Ostrov diagnosed Plaintiff with Post-Traumatic Stress Disorder ("PTSD"), with an onset in September 2010. He also concluded that Plaintiff suffers from a personality disorder. (Doc. 8, p. 32). Plaintiff asserts that his PTSD was caused by the RES conditions and related trauma he experienced at the hands of the USMS and BOP. The PTSD severely impairs his mental faculties and brain function, and causes dissociation. Plaintiff learned in October 2016 that his symptoms "are pathognomic of neurological damage caused by RES-conditions." *Id.* His severe symptoms, including periodic incompetence, dissociation, and severe insomnia, continued until January 1, 2017. Since then he has experienced milder symptoms.

Plaintiff seeks nominal, compensatory, and punitive damages. (Doc. 8, p. 34).

## Exhaustion of Administrative Remedies

Plaintiff maintains that he has properly exhausted his administrative remedies with the Bureau of Prisons and the United States Marshals Service. He states that he first attempted to file for an administrative remedy on May 23, 2014, by sending a letter to U.S. Marshal William Berger, while Plaintiff was in the custody of the USMS in Florida. (Doc. 8, pp. 11, 16). He never received a response to that inquiry. He next attempted to obtain an administrative remedy from the USMS on March 7, 2016, when he mailed a request for tort claim forms to the USMS Washington, D.C., field office. (Doc. 8, p. 11). That letter was returned as undeliverable, as were two subsequent letters to the USMS in March and April 2016. After Plaintiff's earlier case (No. 16-cv-968) was dismissed, Plaintiff submitted a tort claim form and his proposed amended complaint to the USMS FOIA address on December 14, 2016. (Doc. 8, p. 12). On July 6, 2017, the USMS responded with a letter requesting medical records from Plaintiff for the period from October 17, 2008 through June 30, 2015, so they could fully adjudicate his claim. (Doc. 8, pp. 24-25).

As to the Bureau of Prisons, Plaintiff submitted 2 administrative tort claims. He mailed the first tort claim to that agency on February 12, 2016, asserting that the BOP was responsible for causing his PTSD. (Doc. 8, p. 12). The BOP response, mailed to Plaintiff on October 7, 2016, references only incidents that "occurred on October 2008 and September 2010." (Doc. 8, p. 13). The letter instructs that Plaintiff's claim is denied, and that he may file suit "no later than six months after the date of mailing" of the letter. *Id.* Plaintiff submitted his second claim on November 29, 2016, raising all the matters included in the instant First Amended Complaint. The BOP's response to this second tort claim is dated May 19, 2017, and again notes that Plaintiff's tort claim is denied, based upon the BOP's determination that the claim "is barred by

the statute of limitations." (Doc. 8, p. 15).

**Previous Litigation**

Plaintiff raised substantially the same claims as he now raises herein, in his earlier FTCA case filed in this Court on August 28, 2016, *White v. USA*, Case No. 16-cv-968-JPG.[5] That action was dismissed on November 22, 2016. At the time Plaintiff filed the instant action, his motions to alter or amend the judgment in Case No. 16-cv-968 (Docs. 17, 18, & 19 in that case) were still pending. Those motions have since been granted in part, to the extent that the dismissal of several of Plaintiff's claims in the earlier suit (Counts 1-2 and 4-8, insofar as the USMS was the relevant agency) became a dismissal without prejudice for failure to exhaust administrative remedies. (Doc. 21 in Case No. 16-968). However, to the extent that the BOP was the relevant actor in those claims, Counts 1-2 and 4-8 remained dismissed with prejudice on statute of limitations grounds.[6] *Id.* Count 3 and Counts 9-12 remained dismissed without prejudice for failure to exhaust.[7]

Plaintiff's request to join the instant case with Case No. 16-cv-968 has been denied. (Doc. 11).

In 2014, Plaintiff filed a *Bivens* action in Florida against the U.S. Marshal and others who held him and subjected him to the adverse conditions he describes in the case at bar, while Plaintiff was in the Seminole County Jail. *White v. Berger, et al.*, Case No. 14-cv-936-Orl-41TBS (M.D. Fla.). That action was dismissed by the district court on March 28, 2016 (Doc. 144 in that case), and Plaintiff appealed.

---

[5] Case No. 16-cv-968 was filed before Plaintiff received either of the BOP's responses to his administrative tort claims.
[6] Count 13 in Case No. 16-683 was also dismissed with prejudice; Plaintiff did not reassert that claim in the present action.
[7] On August 21, 2017, Plaintiff filed yet another motion to alter or amend the judgment in Case No. 16-cv-986-JPG (Doc. 24 in that case), which has yet to be addressed by the Court.

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the Complaint, and consistent with the Court's characterization of Plaintiff's claims in Counts 1-12 in his now-dismissed case (*White v. USA*, Case No. 16-cv-968-JPG), the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

As to each of the counts below, Plaintiff asserts that he was subjected to physical pain and injury, and emotional distress (inflicted either intentionally or negligently). He characterizes some of his treatment as "assault and battery." He also asserts a tort of "loss of normal life."

> **Count 1 – Defendant United States, acting through employees of the United States Marshals Service, willfully brutalized Plaintiff by subjecting him to Restricted Environmental Stimuli ("RES") conditions as well as inadequate heat and sanitation, thus intentionally inflicting physical pain and injury, and emotional distress, between October 17, 2008, and December 29, 2008, in Roanoke, Virginia, the MCC-Chicago in Illinois, and the Oklahoma City Transfer Center;**
>
> **Count 2 – Defendant United States, acting through employees of the Bureau of Prisons, willfully brutalized Plaintiff by subjecting him to RES conditions, causing symptoms of neurological damage and PTSD, and intentionally inflicting emotional distress, between September 1, 2010, and April 20, 2011, at FCI-Berkley and MCC-Chicago;**
>
> **Count 3 – Defendant United States, acting through employees of the United States Marshals Service, willfully brutalized Plaintiff with deprivation of sleep, food, and water, and constant exposure to intense light, thus intentionally inflicting physical pain and emotional distress, between May 20, 2014, and November 30, 2014, in Sanford, Florida;**
>
> **Count 4 – Defendant United States, acting through employees of the United States Marshals Service, subjected Plaintiff to unnecessary security conditions including RES for a 10-day period, inflicting physical and emotional distress upon him while at MCC-Chicago in May 2009;**

9

**Count 5** – Defendant United States, acting through employees of the United States Marshals Service and the Bureau of Prisons, subjected Plaintiff to unnecessary security conditions including RES and black-box restraints, aggravating his PTSD and inflicting emotional distress between June 9, 2012, and August 8, 2012, at the Federal Detention Center in Miami and at the Oklahoma City Transfer Center in Oklahoma;

**Count 6** - Defendant United States subjected Plaintiff to unnecessary security conditions including RES and black-box restraints, aggravating his PTSD and inflicting emotional distress between January 7, 2013, and January 14, 2013, at FTC Oklahoma;

**Count 7** – Defendant United States subjected Plaintiff to unnecessary security conditions including RES, aggravating his PTSD and inflicting emotional distress between January 23, 2013, and January 26, 2013, at MCC-Chicago;

**Count 8** – Defendant United States subjected Plaintiff to unnecessary security conditions including RES, aggravating his PTSD and inflicting emotional distress between June 10, 2013, and June 12, 2013, at the FDC in Philadelphia, Pennsylvania;

**Count 9** – Defendant United States subjected Plaintiff to unnecessary security conditions including black-box restraints and RES, during transit and after, injuring his wrist and aggravating his PTSD and thus harmed Plaintiff between December 23, 2014 and January 9, 2015 at FTC-Oklahoma;

**Count 10** – Defendant United States subjected Plaintiff to unnecessary security conditions including RES, aggravating his PTSD and inflicting emotional distress between January 9, 2015 and March 3, 2015 at the FCI in Loretto, Pennsylvania and the USP-Canaan in Waymarket, Pennsylvania;

**Count 11** – Defendant United States subjected Plaintiff to unnecessary security conditions including black-box restraints and RES, aggravating his PTSD and inflicting emotional distress between April 21, 2015 and April 20, 2015 at FTC-Oklahoma;

**Count 12** – Defendant United States subjected Plaintiff to unnecessary security conditions including black-box restraints, aggravating his PTSD and inflicting emotional distress on June 8, 2015 while in transit from the United States Penitentiary in Marion.

This Court discussed the timeliness of Plaintiff's claims above, as well as his efforts to exhaust administrative remedies, at length in the order dismissing *White v. USA*, Case No. 16-cv-

683-JPG (Doc. 15 in that case), and in the order partially granting his motions to alter or amend the judgment (Doc. 21 in Case No. 16-cv-683). That discussion shall not be repeated here. As explained in the order dismissing Case No. 16-cv-968-JPG, an FTCA claim must be filed with the relevant agency "within two years after such claim accrues." 29 U.S.C. § 2401(b). (Doc. 15, pp. 8-11 in Case No. 16-968). The undersigned Judge concluded that because Plaintiff did not file an administrative claim within 2 years of the events underlying Counts 1-2 and 4-8, he was barred from pursuing those claims as they relate to actions while Plaintiff was in the custody of the BOP.[8] However, because the USMS was still considering Plaintiff's administrative tort claim during the pendency of Case No. 16-cv-683, the Court found that the dismissal of certain counts with prejudice was premature, where the USMS was the relevant actor. (Doc. 21, pp. 13-14).

To summarize, all of Plaintiff's claims in Case No. 16-cv-683 that arose from actions by the USMS were dismissed without prejudice, because Plaintiff had not exhausted his administrative remedies with that agency before he filed suit. Of the claims where the BOP was the relevant actor, all claims that arose more than 2 years before Plaintiff sought administrative relief from the BOP were dismissed with prejudice as time-barred.

As of the filing date of the instant case, Plaintiff's claims relating to his USMS custody remained unexhausted. The letter from the USMS dated July 6, 2017, (included with the First Amended Complaint) demonstrates that Plaintiff's administrative claims against that agency were still under consideration when Plaintiff brought this action on June 28, 2017. Until the USMS issues a final denial of Plaintiff's tort claims, a federal lawsuit over actions of USMS employees is premature. Accordingly, Plaintiff has failed to exhaust his administrative claims in

---

[8] The Court found that Plaintiff was aware of his symptoms and injuries inflicted upon him at the time they occurred, and well before February 12, 2016, when he first filed an administrative tort claim with the BOP. (Doc. 15, pp. 8-11).

Counts 1,[9] 3, and 4, which according to the First Amended Complaint, arose exclusively from actions by USMS employees/agents. The claims in **Counts 1, 3, and 4** shall therefore be dismissed without prejudice as unexhausted.

For Count 5, the Complaint states that both the USMS and the BOP were at fault. For Counts 6-12, Plaintiff's narrative does not clearly state whether the actors were associated with the USMS or the BOP, or if both agencies were involved. To the extent that the USMS was the relevant actor in these claims, Counts 5-12 must also be dismissed without prejudice as unexhausted, because Plaintiff filed this suit while his administrative claims were still under consideration by that agency. (See Doc. 21, pp. 13-14, in Case No. 16-cv-683).

Turning to the claims that arose during periods when the Bureau of Prisons was (or may have been) Plaintiff's custodian, a number of these claims were dismissed with prejudice in *White v. USA*, Case No. 16-cv-683-JPG, as having been filed too late. These time-barred claims, insofar as the BOP was the relevant actor, include Count 2, and Counts 5-8. (See Doc. 15, pp. 7-11, 13; Doc. 21, pp. 5-9, 13-14, in Case No. 16-cv-683). Consistent with this Court's previous orders in Case No. 16-cv-683, therefore, **Count 2 and Counts 5-8**, to the extent that the BOP was the relevant actor, shall again be dismissed with prejudice as time-barred.[10]

Counts 9-12 involve incidents that date from December 23, 2014, through June 8, 2015. These are the only claims that fall within the 2-year period prior to the dates Plaintiff submitted his administrative claim to the Bureau of Prisons (February 12, 2016, and again on November 29, 2016). Counts 1-8 all arose before February 12, 2014 (and November 29, 2014), and are

---

[9] Notably, Plaintiff admits that the claims in Count 1, which arose in 2008, are time-barred. (Doc. 8-1, p. 6,¶ 16). Nonetheless, the July 6, 2017, letter from the USMS states that Plaintiff's administrative tort claims including that time frame are still under consideration.

[10] The Court rejected Plaintiff's arguments that the statute of limitations for filing an administrative tort claim did not begin to run until his PTSD/neurological injury was diagnosed in February 2016, and that the incidents that allegedly damaged him should be considered part of a "continuing tort." (Doc. 21, pp. 2, 5-9).

time-barred under the FTCA, to the extent they involved BOP as the relevant agency.

It now appears that Plaintiff has exhausted his administrative claims with the BOP. While the BOP's letter of May 19, 2017, indicates that Plaintiff's claims were denied by the agency on statute of limitations grounds, Plaintiff no doubt contests that determination. On its face, the First Amended Complaint indicates that Plaintiff has filed this action within the applicable time limits as to Counts 9-12, with reference to his attempts to seek administrative relief from the BOP. Accordingly, the claims in **Counts 9-12** may proceed for further consideration in this action, but *only* to the extent that they involve the Bureau of Prisons as the relevant actor. Any portion of Counts 9-12 that relate to the USMS as the relevant actor remain unexhausted, and shall again be dismissed without prejudice.

## Pending Motions

The Court **RESERVES RULING** on Plaintiff's motion for leave to proceed *in forma pauperis* ("IFP") (Doc. 9) until Plaintiff provides his full prisoner trust fund statement for the period from December 1, 2016 to June 30, 2017, as ordered in Doc. 10. This action is subject to dismissal if Plaintiff fails to comply with the order to provide his complete trust fund statement information. *See* FED. R. CIV. P. 41(b).

Plaintiff's motion for recruitment of counsel (Doc. 12) is referred to the United States Magistrate Judge for disposition.

## Docs. 13 and 14

On August 21, 2017, Plaintiff filed a "Second Affidavit as to Exhaustion of Administrative Remedy" (Doc. 13), and a "Notice of Additional Authority as to Administrative Remedy" (Doc. 14).[11] In the "Second Affidavit," Plaintiff argues that due to actions of the USMS in 2014 which frustrated his attempts to file for an administrative remedy with the USMS,

---

[11] Plaintiff also filed this "Notice" in Case No. 16-cv-968, where it was docketed as Doc. 23.

as well as subsequent transfers between institutions between December 23, 2014, and June 8, 2015, he was estopped from filing an administrative tort claim. (Doc. 13, pp. 1-3). As a result, his time for filing an administrative claim with the USMS should be extended.

In the "Notice" (Doc. 14), Plaintiff argues that his presentation of his administrative claims to the BOP in February 2016 and November 2016 should be considered sufficient to have also presented his claims to the USMS at the same time. Therefore, he has completed the administrative tort claim procedure as to his 2014 and 2015 injuries, and should now be permitted to litigate those matters. (Doc. 14, pp. 1-2).

These newest documents do not change the Court's analysis of Plaintiff's claims above. Count 3 herein encompasses injuries to Plaintiff between May 20, 2014, and November 30, 2014, allegedly perpetrated by the USMS. Based on the July 6, 2017, letter from the USMS, that agency has not completed its consideration of any of Plaintiff's claims, thus they remain unexhausted. Plaintiff must file a future lawsuit after administrative exhaustion has been completed, if he wishes to pursue any of the claims arising from actions of the USMS. The remaining incidents that occurred in 2014 and 2015 are encompassed in Counts 9-12, which may go forward in this action as they relate to the BOP as the relevant actor.

## Disposition

**COUNTS 1, 3, and 4** are **DISMISSED** without prejudice as unexhausted, because Plaintiff's administrative claim filed with the U.S. Marshals Service remains pending. Those portions of **COUNTS 5-12** where the USMS is the relevant actor are also **DISMISSED** without prejudice as unexhausted.

**COUNT 2** is **DISMISSED** with prejudice as barred by the statute of limitations, because Plaintiff did not file an administrative claim with the Bureau of Prisons within the 2-year period

14

following the incidents. Those portions of **COUNTS 5-8** where the BOP is the relevant actor are also **DISMISSED** with prejudice as barred by the statute of limitations.

As to the remaining portions of the FTCA claims in **COUNTS 9-12** where the Bureau of Prisons is the relevant actor, the Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons for service of process on the United States; the Clerk shall issue the completed summons. Pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the First Amended Complaint and supporting Brief (Docs. 8 & 8-1), and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the First Amended Complaint and supporting Brief (Docs. 8 & 8-1), and this Memorandum and Order.

It is **FURTHER ORDERED** that Plaintiff shall serve upon the United States Attorney for the Southern District of Illinois a copy of every pleading or other document submitted for consideration by this Court. Plaintiff shall include with the original paper to be filed a certificate stating the date that a true and correct copy of the document was mailed to the United States Attorney. Any paper received by a district judge or a magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 12).

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, even if his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: August 25, 2017**

*s/J. Phil Gilbert*
United States District Judge