IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM A. WHITE, 13888-084, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 17-cv-00683-JPG |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

This matter comes before the Court on Defendant's Motion to Revoke *In Forma Pauperis* Status and Dismiss Action With Prejudice filed October 15, 2020. (Doc. 92). Defendant seeks revocation of Plaintiff's pauper status based on his omission of relevant financial information from his IFP application and his failure to notify the Court of subsequent changes to his finances. (*Id*.). Defendant also seeks imposition of sanctions, including dismissal of this action among other things. (*Id*.). For the reasons set forth herein, the motion shall be **GRANTED** and this case **DISMISSED with prejudice**.

### BACKGROUND

Plaintiff William White is an inmate in the custody of the Federal Bureau of Prisons ("BOP") and is currently incarcerated at the United States Penitentiary in Marion, Illinois ("USP-Marion"). On June 30, 2017, he filed this suit pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-2680. (Doc. 1). Following screening of this matter, Plaintiff was allowed to proceed with FTCA claims against the United States arising from the allegedly tortious conduct of federal officials. (Docs. 8 and 16). He seeks $10 million in damages. (Doc. 8).

1

A.     **IFP Application**

On August 14, 2017, Plaintiff requested leave to proceed *in forma pauperis* ("IFP"). (Doc. 9). He used the District's standard form, which states, in no uncertain terms, that the applicant must "answer[ ] the . . . questions under penalty of perjury." (*Id*. at 1). Plaintiff was required to disclose all wages and income he received during the preceding twelve months. (*Id*.). He was also required to include a separate page listing each source of money, the amount he received, and the amount he anticipated receiving in the future. (*Id*.).

In his IFP application, Plaintiff disclosed no wages and no income from any source, including gifts, inheritances, rent, insurance, etc. (*Id*.). He disclosed no money in a savings or checking account and no other assets. (*Id*. at 2). He attached no separate document itemizing wages or income. (*Id*.). He then certified the accuracy of this disclosure by "declar[ing] under penalty of perjury that the above information is true" and acknowledging that "a false statement may result in a dismissal of [his] claims." (*Id*.). Plaintiff signed the declaration on August 8, 2017. His trust fund account statement listed his balance as $331.81 on August 27, 2017. (Doc. 17).

Based on this information, the Court found that Plaintiff was indigent and unable to pay his full filing fee of $400.00. (Doc. 23). Plaintiff's IFP motion was granted September 11, 2017. (*Id*.). He paid the entire reduced fee of $350.00 by October 10, 2017.[1]

B.     **Defendant's Motion to Revoke Plaintiff's IFP Status**

Defendant now asks the Court to revoke Plaintiff's IFP status and dismiss this action for failure to disclose substantial income and/or gifts when seeking leave to proceed as a poor person in this action. Defendant points to documents Plaintiff filed in several other pending cases that establish the availability of significant funds during the pending action. The Court can take judicial

---

[1] Plaintiff made the following payments toward his filing fee obligation: (1) $93.69 on September 19, 2017; (2) $196.31 on September 28, 2017; and (3) $60.00 on October 10, 2017.

notice of these public records available on government websites. *See Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir. 1983); *Bova v. U.S. Bank, N.A.,* 446 F. Supp. 2d 926, 930 n.2 (S.D. Ill. 2006).

Defendant points to Plaintiff's Sworn Declaration, available on the Public Access to Court Electronic Records ("PACER") website (www.pacer.gov) and filed as part of a 600-page Motion for Compassionate Release in the Western District of Virginia on October 5, 2020. *United States v. White*, No. 08-cr-00054-EDK (W.D. Va.) (Doc. 411). There, Plaintiff explains that benefactors have paid many tens of thousands of dollars to assist him with litigation during the past five years:

> My friend Paul Angel collects money for my legal defense which he transfers to my mother to repay the money she's advanced me over the past twelve years to pay them. In 2019, my friends, family, and supporters, contributed about $30,000 to pay my legal and personal expenses. This year, I anticipate over $20,000 will be contributed towards the same. Over the past 5 years, I would estimate that 150-200 persons not related to me have made donations towards my legal costs.

(Doc. 411 at 8, ¶ 27; 116 at ¶ 310). Plaintiff also disclosed his receipt of—or easy access to—significant funds in other public filings. For example, he advised one federal court that he paid a psychologist $14,000 to prepare an expert report on his mental condition and reserved another $6,000-10,000 to pay for the expert's testimony. *See White v. USA*, No. 20-cv-291-MWB-EBC (M.D. Pa.) (Doc. 106 at 1) (Att. 3). He alluded to income from book sales (Att. 4) and the sale of documents he received through his Freedom of Information Act (FOIA) request (Att. 5).[2] In addition, Plaintiff filed an advertisement soliciting contributions to his legal defense fund in *White v. FBI, et al.*, No. 17-cv-948-JPG (Doc. 25-6 at 30) (S.D. Ill.) (Att. 2), before disclosing donations from 150-200 individuals in his Sworn Declaration that is quoted above.

Defendant maintains that these documents establish that Plaintiff received substantial undisclosed income and gifts that date back to 2015 and provide evidence that his IFP application

---

[2] Defendant obtained this information from https://issuu.com/presspad/docs/i2395/7.

was false when filed in 2017. (Doc. 92). Moreover, Plaintiff failed to provide the Court with a single notice that his financial situation changed after he was granted IFP. Accordingly, Defendant asks the Court to revoke Plaintiff's IFP status and/or dismiss this action with prejudice. (*Id*.).

**C.     Plaintiff's Response**

In his *pro se* Response, Plaintiff claims that this matter is controlled by the Seventh Circuit's decision in *Robertson v. French*, 949 F.3d 347 (7th Cir. 2020).[3] According to Plaintiff, *Robertson* only obligated him to disclose two pieces of information in his IFP application: (1) his current assets; and (2) his prison trust fund account statement for the six months preceding the action. *Id*. Plaintiff contends he was not obligated to report any other income for the preceding twelve months—only assets "available . . . without restriction." (Doc. 95, p. 2).

Moreover, Plaintiff argues that he paid the $350.00 filing fee in this matter in 2017, so his financial status is now irrelevant. (Doc. 95). Perhaps for this reason, Plaintiff goes on to admit that he has benefitted from a steady and unending stream of donations and gifts for more than a decade. (*Id*.). Plaintiff's mother has paid his legal fees and expenses since 2008. (*Id*. at 2). To date, he estimates that she has paid almost $200,000.00 on his behalf. (*Id*. at 5, ¶ 2). From 2014-17, she paid "something like $21,500 on [his] legal expenses." (*Id*.). His friend, Paul Angel, then raised "something less than $17,250" to pay her back during the same time period.[4] (*Id*.). Because of this shortage, Plaintiff argues that he was technically indigent on the date he filed his IFP application. (*Id*.).

---

[3] *Robertson* does not address "new income that is held outside the prison." *Robertson*, 949 F.3d at 350. This case focuses almost entirely on that issue.

[4] In a Sworn Declaration, Plaintiff states "My friend, Paul Angel, the sole proprietor of Poisoned Pen Press . . . raises money for my legal defense. I often but not always write a copy for announcements that he places in the *American Free Press* newspaper, and, I also write to donors. None of the money that Paul Angel raises goes to me. Angel transfers it all to my mother, who plays no role in raising the money. My mother then applies this money against my debts to her. She also holds the money in segregated accounts and lets me advise her on how the money is invested." (Doc. 95, pp. 5-6, ¶¶ 3-4).

Although Plaintiff does not dispute any information disclosed in the court filings cited by Defendant, Plaintiff maintains that all of these funds were raised by Paul Angel after Plaintiff satisfied his filing fee obligation in this case. His mother routinely paid his legal fees from funds she controls and "not always" as he directs. (*Id*. at 2). Because the money never actually "touches Plaintiff's hands," he asks the Court to recognize that he had no obligation to report it.[5] (*Id*.). But, if anyone is to blame for not disclosing this information, Plaintiff claims it is his *pro bono* attorney.

### DISCUSSION

When a prisoner is indigent and unable to pay the filing fee for a civil case, he may apply for permission to proceed *in forma pauperis* without prepaying the full filing fee for the action. 28 U.S.C. § 1915. He is required to submit an affidavit along with his IFP application, in which he discloses his income, assets, debts, and liabilities. *See* § 1915(a)(1). The Prison Litigation Reform Act ("PLRA") requires the IFP applicant to disclose all income and assets that he possesses at the time of his application. *Id*. In addition, the applicant must submit a certified copy of his trust fund account statement for the six-month period preceding the filing of the action. *Id*.

An IFP plaintiff may incur additional disclosure obligations when using a district court's long form IFP application, as Plaintiff did in this case. *Robertson v. French*, 949 F.3d 347, 352 (7th Cir. 2020). These additional obligations typically include the duty to produce financial information for twelve months preceding the action, instead of six. The Seventh Circuit has long recognized that IFP applicants also have an additional duty to notify the Court of any changes in their financial situation. *See id.* (citing *Thomas v. General Motors. Acceptance Corp.*, 288 F.3d 305, 306 (7th Cir. 2002)).

---

[5] This includes the $14,000 his mother paid for an expert report in November/December 2018 and the additional $6,000 she reserved for the expert's testimony in 2019. (*Id*. at 3). Plaintiff explains that these amounts are much like the $1 million he stands to inherit from his mother when she dies—money not yet in his possession or direct control. (*Id*.).

When making these disclosures, it is not up to the IFP applicant to decide what information the Court will deem important—either at the time of filing his IFP application or after his IFP motion is granted.  The applicant remains obligated to disclose relevant financial information *at all times*.  This duty of disclosure extends beyond the date an IFP plaintiff pays his reduced filing fee in full.  The Court—not the applicant—must decide whether the information impacts an IFP plaintiff's initial application, ongoing pauper status, or related matters.

If the Court discovers that a plaintiff's allegation of poverty was untrue, it must dismiss the case.  28 U.S.C. § 1915(e)(2)(A).  In this context, "untrue" is understood to mean a false or dishonest disclosure or omission.  *Robertson*, 949 F.3d at 351.  A misrepresentation is "enough to support dismissal of a case," even if the information would not otherwise disqualify the applicant from pauper status.  *Id.*  The Seventh Circuit has upheld the dismissal of a case, based on an IFP applicant's deliberate failure to disclose $1,400 held in an outside trust account—despite the fact that this amount did not otherwise disqualify the applicant from pauper status.  *See Kennedy v. Huibregste*, 831 F.3d 441, 442 (7th Cir. 2016).  The Court explained:

> Although the district judge might have granted the plaintiff's *in forma pauperis* petition even if he'd disclosed his separate trust account, hiding assets is not a permissible alternative to seeking the judge's assistance. An applicant has to tell the truth, then argue to the judge why seemingly adverse facts (such as the trust fund in this case) are not dispositive.  A litigant can't say, "I know how the judge *should* rule, so I'm entitled to conceal material information from him."

*Kennedy*, 831 F.3d at 442.

If the IFP plaintiff fails to timely update the Court about changes in his financial status during the course of litigation, the Court has independent grounds for dismissing the case.  *See Thomas v. General Motors. Acceptance Corp.*, 288 F.3d 305, 306 (7th Cir. 2002) (dismissal of case for failure to update IFP application upheld).  Plaintiff's obligation to disclose financial continues throughout litigation.

6

The Court finds that Plaintiff's allegation of poverty was untrue at the time he submitted his IFP application. By his own admission, Plaintiff received a predictable, reliable, and steady stream of contributions toward his litigation expenses from 150-200 supporters, a friend, and his mother. These contributions date back to 2008 and total approximately $200,000. Plaintiff discloses contributions in excess of $90,000[6] toward his litigation expenses since 2014 alone, and this time period encompasses the date he filed for IFP. The fact that these contributions never physically touched Plaintiff's hands does not render them irrelevant or unworthy of disclosure. *See Kennedy v. Huibregste*, 831 F.3d 441, 442 (7th Cir. 2016). Plaintiff was obligated to disclose all relevant financial information in his IFP application and let the Court decide whether the information impacted his pauper status. He disclosed nothing. Plaintiff's intentional omission of these contributions deprived the Court of the information it needed to make this assessment. Against this backdrop, the Court finds Plaintiff's insistence that he was indigent when filing for IFP disingenuous. And the Court notes that Plaintiff paid the entire reduced filing fee for this action within thirty days of the Court's order granting his IFP motion. Pursuant to § 1915(e)(2)(A), this case must be dismissed.

Even if his allegation of poverty was true, however, the Court finds another independent ground for dismissal of this case. Plaintiff failed to update the Court, even once, about changes in his finances after receiving IFP status. Based on his own admissions, discussed at length above, he has benefitted from substantial financial contributions toward legal expenses in the three years this action has been pending. The Seventh Circuit has affirmed the dismissal of cases with

---

[6] This includes, but is not limited to: (a) $30,000 from "friends, family, and supporters" in 2019 (Doc. 411 at 8, ¶ 27; 116 at ¶ 310 (Att. 1)); (b) more than $20,000 contributed towards the same in 2020 (*id*.); (c) $14,000.00 his mother paid for an expert report in November/December 2018 and the additional $6,000 she reserved for the expert's testimony in 2019 (Doc. 95, p. 3); (d) "something like $21,500" paid by his mother from 2014-17 (Doc. 95, p. 5, ¶ 2)

7

prejudice when an IFP plaintiff similarly fails to update the Court on changes to his financial status during the pending action. *See Childress v. Kerr*, 803 F. App'x 949 (7th Cir. 2020) (although not expressly required by the PLRA, Seventh Circuit precedent requires IFP plaintiff to report changes to financial status); *Thomas*, 288 F.3d at 306 (7th Cir. 2002) (IFP plaintiff's case dismissed with prejudice under § 1915(e)(2)(A) in part because he did not update his IFP application after receiving $50,000 in retirement funds). Consistent with this line of cases, the Court deems dismissal with prejudice appropriate here based on Plaintiff's failure to update the Court about changes to his financial status during the pending action. Plaintiff's IFP status shall be revoked, and he shall be obligated to pay the additional $50.00 filing fee for this action.

That is not all. This case isn't just about $50.00. Plaintiff misrepresented his financial status when filing for IFP *and* court-recruited counsel in 2017. The finding of indigence in connection with his IFP application opened the door to *pro bono* representation. Plaintiff's Motion for Recruitment of Counsel was granted based, in part, on his indigent status on October 2, 2017. (Doc. 30). Counsel has represented him in this matter ever since. During this time, Plaintiff's attorney has prepared and filed a Second Amended Complaint, consisting of 122 pages and 54 counts, on his behalf. (Doc. 49). The Second Amended Complaint gave rise to three additional lawsuits, when several claims were severed from this case. (Doc. 72). He successfully opposed a motion to dismiss (Docs. 57, 70, and 72), and he recently filed a brief in opposition to summary judgment. (Docs. 84 and 93). Plaintiff's omission of all reference to outside funds from family, friends, and benefactors enabled him to secure free representation for three years and avoid substantial costs of litigation in this case.

No more. Plaintiff's counsel shall have twenty-one (21) days to file a Motion for Reimbursement of Fees and Costs associated with this case. The Court will not enter judgment in

this matter until the deadline expires.  By the same deadline, Plaintiff is **ORDERED TO SHOW CAUSE** why he should not be held liable for his attorney's fees and costs.  The deadline is **JANUARY 13, 2021**.

## DISPOSITION

**IT IS ORDERED** that Defendant's Motion to Dismiss and Revoke *In Forma Pauperis* Status (Doc. 92) is **GRANTED**.  Plaintiff's *in forma pauperis* status is **REVOKED**, and he is obligated to pay the additional $50.00 fee associated with this case within twenty-one (21) days (on or before **JANUARY 13, 2021**).  This action is **DISMISSED with prejudice** as a sanction against Plaintiff for intentionally misleading the Court about his financial status at the time of filing his application for leave to proceed *in forma pauperis* and for failing to update the Court about changes to his financial status thereafter.  *See* 28 U.S.C. § 1915(e)(2)(A).  All pending motions (Docs. 84, 94, 99, 100, and 101) are **DISMISSED** as **MOOT**.

On or before **JANUARY 13, 2021**, Plaintiff's counsel shall file a Motion for Reimbursement of Fees and Costs associated with this case.  By the same deadline, Plaintiff is further **ORDERED TO SHOW CAUSE** why this Court should not require him to pay the fees and costs associated with his representation in this matter.  The Court will defer entry of judgment until this deadline expires.

**DATED:**     12/23/2020

s/ *J. Phil Gilbert*
**J. PHIL GILBERT**
**United States District Judge**