IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **WILLIAM A. WHITE, 13888-084,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | )   Case No. 17-cv-00683-JPG |
| | ) |
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Defendant.** | ) |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

The question before this Court is whether additional sanctions are warranted against Plaintiff William White for material omissions in his application for leave to proceed *in forma pauperis* ("IFP"). (*See* Docs. 2, 3, and 9). White's omission of income and assets from his IFP application resulted in a finding of indigence that allowed him to avoid prepayment of the full filing and docketing fee for this action while also receiving *pro bono* representation for more than three years. 28 U.S.C. §§ 1915(a), (e)(1). On December 23, 2020, this Court entered an Order revoking his IFP status, requiring him to pay the remaining $50.00 filing fee, and dismissing the case with prejudice, subject to further consideration of what, if any, additional sanctions should be imposed against him. (Doc. 102). White was specifically ordered to show cause why he should not be required to pay some portion of his attorney's fees and costs.

White's court-recruited counsel, Attorney Blane Osman, filed a Motion Waiving Attorney Fees and Requesting Reimbursement of Certain Costs (Doc. 103) on January 8, 2021. White filed a Response (Doc. 113) to the show cause order on May 3, 2021. The Court has reviewed these submissions.

1

The Court now finds that White has not demonstrated why he should avoid sanctions in connection with his IFP application, and he has given the Court additional reasons why sanctions are necessary to prevent further abusive litigation in this District. Therefore, Attorney Osman's Motion Waiving Attorney Fees and Requesting Reimbursement of Costs of $35.50 (Doc. 103) shall be **GRANTED**, and White shall also be subject to a two-year **FILING RESTRICTION**.[1]

## Background

White disclosed no wages, income, or assets in his application for leave to proceed *in forma pauperis* ("IFP") in this case in mid-2017. (*See* Docs. 2, 3, and 9). On the basis of this application, which was supported by a trust fund account statement showing an average daily balance of $375.45 in the 6-month period preceding the action (Doc. 17), the Court determined that White was poverty-stricken and qualified to proceed IFP without prepaying the full $400.00 filing fee for this action in September 2017. (Doc. 23). The following month, based on this same finding of indigence, the Court concluded that White was unable to afford an attorney and granted his motion for court-recruited counsel. (Doc. 30) (citing 28 U.S.C. § 1915(e)(1)).

For more than three years, White litigated this case to the extreme. He filed three complaints. (Docs. 1, 8, and 49). The First Amended Complaint (Doc. 8) set forth a dozen claims against the United States—three of which were dismissed without prejudice at screening as being obviously unexhausted and four of which were already dismissed with prejudice in prior actions. (*See* Doc. 16). The Second Amended Complaint (Doc. 49) set forth claims against the United States that arose at fifteen prisons and jails in ten federal judicial districts between 2008 and 2017. (*Id.*). The body of the complaint spanned 122 pages, 719 paragraphs, and 54 claims. (*Id.*). It included an additional 18 pages of exhibits, for a total of 140 typewritten pages. (*Id.*). Defendant

---

[1] This filing restriction is separate and independent from the restriction imposed in *White v. Collis, et al.*, No. 20-cv-01117-JPG (S.D. Ill.).

filed a motion to dismiss 49 of these claims, prompting a full round of briefing by both parties and dismissal of most claims as being time-barred. (Docs. 57 and 72). Six claims were transferred to one or more other federal judicial districts for further litigation in the proper venue. (Doc. 72). Defendant then filed for summary judgment on the remaining claims in this case, prompting a second complete round of briefing. (Doc 84).

During this second round of briefing, White's finances came into the spotlight again when Defendant filed a motion seeking revocation of White's IFP status and dismissal of the action under 28 U.S.C. § 1915(e)(2). (Doc. 92). Section 1915(e)(2) compels dismissal of a case filed by an IFP litigant at "any time" the Court determines that the allegation of poverty is untrue "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid."[2] *Id*. Far from being poverty-stricken, White revealed in numerous other court filings that he was the beneficiary of financial assistance from multiple sources—including his friend, mother, and 150-200 others.

Defendant pointed to documents White filed in other cases establishing the availability of significant funds. For example, in a sworn declaration filed as part of a 600-page motion for compassionate release in the Western District of Virginia on October 5, 2020, White stated that benefactors have paid thousands of dollars to assist him with litigation since 2015:

> My friend Paul Angel collects money for my legal defense which he transfers to my mother to repay the money she's advanced me over the past twelve years to pay them. In 2019, my friends, family, and supporters, contributed about $30,000 to pay my legal and personal expenses. This year, I anticipate over $20,000 will be contributed towards the same. Over the past 5 years, I would estimate that 150-200 persons not related to me have made donations towards my legal costs.

*See United States v. White*, No. 08-cr-00054-EDK (W.D. Va.) (Doc. 411 at 8, ¶ 27; 116 at ¶ 310 (Att. 1)). White also disclosed $14,000 used to pay a psychologist for an expert report on his mental condition and $6,000-10,000 used to pay for an expert's testimony in *White v. USA*, No.

---

[2] White paid his $350.00 reduced filing fee in total on October 10, 2017.

20-cv-00291-MWB-EBC (M.D. Pa.) (Doc. 106 at 1) (Att. 3).  In addition, White filed an advertisement soliciting contributions to his legal defense fund in *White v. FBI*, No. 17-cv-00948-JPG (Doc. 25-6 at 30) (S.D. Ill.) (Att. 2), before disclosing donations from 150-200 individuals in the Sworn Declaration quoted above.  White's admissions are numerous, and these examples are by no means exhaustive.

White disclosed none of this information in his IFP application at Docs. 2, 3, and 9, and he failed notify the Court of any changes in his finances during the pending litigation.  Defendant argued that these documents, consisting of sworn statements in the public record, established that White was receiving substantial undisclosed income and gifts dating back to at least 2015.  They rendered his IFP application false when filed in 2017 and, together with his subsequent failure to update his IFP application, provided grounds for sanctions. (Doc. 92).

The Court agreed.  On the basis of his own admissions, the Court determined that White's allegation of poverty was untrue, and his material omissions from his IFP application warranted sanctions.  On December 23, 2020, the Court revoked White's IFP status for misrepresenting his indigence in his IFP application in 2017 and for failing to disclose changes in his finances thereafter—all while benefitting from the assistance of court-recruited *pro bono* counsel for more than three years. (Doc. 102).  White was sanctioned with dismissal of this action with prejudice. (*Id*. at 9).  He was required to pay the remaining $50.00 owed for the filing and docketing fee in this case.  He was further ordered to show cause why he should not be subject to additional sanctions, such as an order requiring him to pay for his attorney's fees. (*Id*.).  At the same time, Attorney Osman was invited to file a statement setting forth the fees and costs White incurred in connection with this case. (*Id*.).

### White's Response

Although White paid the $50.00 fee and filed a response (Doc. 105) to the show cause order in January 2021, the Court struck the first response as improper. (Doc. 112). The initial response was one of many documents White filed in this District that contained insulting, harassing, and abusive language directed at the court, parties, counsel, and government agencies (more on that below). He was given an opportunity to file a second response to the show cause order by April 23, 2021. (*Id.*).

White's second response, received and filed May 3, 2021, is considered timely.[3] (Doc. 113). In it, White insists that he engaged in no sanctionable conduct in connection with his IFP application. White claims his trust fund account statements, alone, were sufficient to establish his indigence and support his request for IFP status. If anyone is to blame for an error or omission, however, it was not him. White specifically blames his friend, his attorney, and the Court. (*Id.*). The Court will briefly summarize and respond to his arguments below.

First, White states that he disclosed his receipt of $500.00 per month from his mother in his initial application for waiver of fees. (Doc. 113, ¶ 2). This is simply not true. The Court reviewed White's original application, entitled "Motion for Joinder and Waiver of Filing Fees" (*see* Docs. 2 and 3) filed June 30, 2017, and it mentions no income whatsoever from White's mother or any other source. The Court also reviewed the second IFP application, a Motion for Leave to Proceed *in forma pauperis* filed August 14, 2017, and it also contains no disclosure of wages, income, gifts, accounts, assets, or otherwise. (Doc. 9). Each time he was prompted to

---

[3] White certified that he placed the Response in the mail on April 20, 2021, three days prior to the court-imposed deadline. (Doc. 113, p. 4). It is considered timely under the "prison mailbox rule." *Taylor v. Brown*, 787 F.3d 851, 859 (7th Cir. 2015) ("[A] pro se prisoner's legal documents are considered filed on the date that they're tendered to prison staff in accordance with reasonable prison policies, regardless of whether they are ultimately mailed or uploaded.").

disclose any financial information, White responded in one of three ways: "no," "$0," or "---." (*Id*.). A trust fund certification filed with the motion shows a then-current trust fund account balance of $358.36. (*Id*. at pp. 3-4). It also lists $3,275.00 as the "national six-month deposits." (*Id*. at 5). However, White offers no explanation for these deposits. When a more complete trust fund account statement was filed on August 28, 2017, it showed a then-current balance of $331.81 and periodic payments from Western Union in the amount of $300.00, again unaccompanied by any explanation of the source of this money. (Doc. 17). Put simply, White did not disclose the fact that his mother provided him with any stream of income, gifts, assets, or otherwise during the relevant time period—let alone multiple steady and significant sources. As to this argument, the Court finds White's assertion that he disclosed his receipt of more than $500.00 per month from his mother untrue and inadequate to satisfy the show cause order.

Second, White admits that he benefitted from his mother's payment of litigation costs in the years preceding his IFP applications but maintains that it was unnecessary to disclose these payments. (Doc. 113, p. 3, ¶ 4). He discloses the following amounts she paid on his behalf: $15,000 for attorney fees in 2013; $10,000 for attorney fees in December 2014 or January 2015; approximately $7,500 for expert fees between September 2015 and mid-2016. He further states, "[S]he may have paid parts of some court costs outside of the trust fund in the year prior to this IFP filing, but I have no record of them and I doubt they were substantial relative to the funds reported." (Doc. 113, ¶ 4).

The IFP application does not permit White to limit his disclosure of income, gifts, wages, or assets, etc. to items in his trust fund account or amounts he considers "substantial relative to the funds reported" above. It also does not allow him to exclude any amounts, based on when costs were incurred on his behalf or when payments were made; this appears to be a distinction White,

himself, makes in order to avoid the one-year reporting requirement in the application. White was explicitly required, under penalty of perjury, to "**state the amount**" he received in the year preceding his IFP applications from "[a]ny other sources," including "gifts and inheritances" among other things. (Doc. 9, p. 1). The application also draws no distinction between amounts received "directly" and "indirectly."

More specifically, White was required to disclose income from any of the following sources in the "past 12 months:" (a) business, profession, or other self-employment; (b) rent payments, interest, or dividends; (c) pension, annuity, or life insurance payments; (d) disability or worker's compensation payments; (e) gifts or inheritances; or (f) any other sources. (Doc. 9, p. 1). He responded "no" to each inquiry. White was also required to "describe below or on separate pages each source of money and **state the amount you received and what you expect to receive in the future**."[4] (*Id.*) (emphasis added). He left his section blank. The application next required him to disclose the "[a]mount of money that [he] ha[s] in cash or in a checking or savings account." (*Id.* at 2). White disclosed "0." (*Id.*). He was further instructed to disclose "[a]ny . . . other financial instrument or thing of value that [he] own[s], **including any item of value held in someone else's name (*describe the property and its approximate value*)**." (*Id.*) (emphasis added). He disclosed "--." (*Id.* at 1-2). White's disclosure of financial information in this case after IFP was revoked is insufficient to satisfy the Court's show cause order.

Third, White also admits to benefitting from funds that were raised by his friend, Paul Angel, and the *American Free Press* from 2015-18 or later. (*See* Docs. 22, 23, and 30). He admits

---

[4] In addition to those amount discussed herein, White disclosed other sources of income and assets in his filings. For example, Defendant points out that White disclosed his status as the beneficiary of an approximately $1 million trust from his mother that he anticipates inheriting upon her death and is "creditor-proof." (Doc. 92, p. 5) (citing *United States v. White*, No. 08-cv-00054-EKD (W.D. Va.) (Doc. 411, ¶ 315)).

that advertisements posted in this publication soliciting donations for his legal costs were inappropriate, but he blames his friend for the misconduct. White further asserts that these funds were used to repay his mother for her litigation expenditures on his behalf from 2014-16. However, the amount repaid was less than her total expenditures, and that is why he did not disclose these sums. The IFP application did not offer the applicant the option of nondisclosure for amounts he deemed insignificant or less than he owed. White should have disclosed this fundraising activity at the time he filed for IFP in this case because it occurred during the year preceding his application, and he should have disclosed it thereafter because fundraising continued. White did not disclose it at all, and he also omitted this information from IFP applications filed in other cases in this District and was granted leave to proceed IFP.[5] White's belated disclosure of this information in the Response (Doc. 113) is too little too late.

Fourth, White claims that he discussed this fundraising activity with his attorney, and they decided together that it was not necessary to disclose the information. However, White completed and filed the IFP applications in this case in June 2017 (Docs. 2 and 3) and August 2017 (Doc. 9). At the time, White was not represented by counsel. In fact, the Court made its decision to recruit counsel only after finding that he was indigent—on the basis of *his* representations in the IFP applications. (*See* Docs. 12, 22, 23, and 30). Given the chronology of events, the Court rejects White's attempts to blame his friend, his *pro bono* counsel, and the Court for the omissions he made in his IFP applications.

---

[5] *See White v. Dept. of Justice*, No. 16-cv-00948-JPG (S.D. Ill. filed Aug. 25, 2016) (Doc. 2, IFP motion filed Aug. 25, 2016, granted Oct. 11, 2016, and $350 paid in full Nov. 7, 2016); *White v. United States*, No. 16-cv-00968-JPG (S.D. Ill. filed Aug. 29, 2016) (Doc. 2, IFP motion filed Aug. 29, 2016, granted Sept. 19, 2016, and $350 paid in full Dec. 9, 2016); *White v. Office of Fed'l Defender*, No. 16-cv-00971-JPG (S.D. Ill. filed Aug. 29, 2016) (Doc. 2, IFP motion filed Aug. 29, 2016, granted Sept. 20, 2016, and $350 paid Nov. 9, 2016); *White v. Inch, et al*, No. 17-cv-01059-JPG-DGW (S.D. Ill. filed Oct. 2, 2017) (Doc. 2 IFP motion filed Oct. 2, 2017, granted Nov. 27, 2017, and $350.00 paid Dec. 27, 2017).

**Attorney Osman's Response**

For his part, Attorney Osman seeks no reimbursement of attorney's fees for his three years of work on White's case(s). He only seeks reimbursement of PACER costs, not already covered by the PACER Exemption, in the amount of $35.50. (*See* Order at Doc. 35). This request shall be granted. Moreover, the Court shall *sua sponte* revisit its Order dismissing as moot White's Motion to Dismiss Counsel (Doc. 99) and **GRANT** the motion. Attorney Osman shall be terminated as counsel of record for White in this case. The Court thanks Attorney Osman for his time and efforts in representing the White in this matter. Attorney Osman shall be **EXEMPT** from *pro bono* appointments made from the District's Pro Bono Panel for the next five (5) years.

**Sanctions**

Additional sanctions are necessary to deter White from engaging in future abusive litigation tactics in this District.

As previously explained, this case will be dismissed with prejudice. The federal statute that authorizes a party to proceed as a poor person, without prepaying the full filing and docketing fee for the action, also compels district courts to "dismiss the case at any time if the court determines that . . . the allegation of poverty is untrue." 28 U.S.C. § 1915(e)(2)(A). Any question about the mandatory dismissal requirement is dispelled by the Seventh Circuit's admonition that once "the allegation of poverty [is proven] false, the suit ha[s] to be dismissed; the judge ha[s] no choice." *Thomas v. Gen. Motors Acceptance Corp.*, 288 F.3d 305, 306 (7th Cir. 2002) (citing 28 U.S.C. § 1915(e)(2)(A)); *Lofton v. SP Plus Corp*, 578 F. App'x 603, 604 (7th Cir. 2014)). In such situations, the only question is whether dismissal should be with or without prejudice. *Thomas*, 288 F.3d at 306. Although a judge should consider lesser sanctions before dismissing a case with prejudice, the court's authority to dismiss a case with prejudice "in an appropriate case

9

is beyond question." *Id*. In fact, "[d]ismissal with prejudice may [be] the only feasible sanction for this [IFP application] perjury designed to defraud the government." *Hoskins v. Dart*, 633 F.3d 541, 544 (7th Cir. 2011); *Thomas*, 288 F.3d at 306-07.

The Court has considered and ruled out lesser sanctions and finds that dismissal without prejudice or monetary fines will do little to deter this litigant. As White revealed to court-recruited counsel (but not the Court) in an initial communication, he has easy access to money:

> P.S. I see that the costs of this matter have been important to you from your motion, and, the agreement. **Don't let costs interfere with your representation. I can often find someone to advance sums when needed.**

(*See* White's Letter to Counsel, dated November 7, 2017, Doc. 95, pp. 9-11) (emphasis added). White made this statement less than two months after he was granted IFP status and just one month after receiving court-recruited counsel to represent him *pro bono* in this case.

Free from the financial constraints associated with actual attorney's fees, White devoted his resources to perpetuating existing litigation and bringing new lawsuits. In this District alone, he filed nineteen civil cases from 2016-20, including twelve new cases filed from 2018-20. This includes five civil rights actions pursuant to 28 U.S.C. § 1331, three cases under the Federal Tort Claims Act, three cases under the Freedom of Information Act, and eight habeas petitions pursuant to 28 U.S.C. § 1441.

He also litigated cases in other federal judicial districts during the same time period, earning at least three "strikes" under 28 U.S.C. § 1915(g) for filing cases that were dismissed as being frivolous, malicious, or for failure to state a claim. *See, e.g., White v. Secor, Inc., et al.*, No. 10-cv-00428 (W.D. Va., dismissed Nov. 5, 2010); *White v. Office of Fed'l Defender*, No. 16-cv-00971-JPG-DGW (S.D. Ill., dismissed July 27, 2017); *White v. Lemma, et al.*, No. 19-cv-01486-PGB-GJK (M.D. Fla., dismissed Aug. 27, 2019). White "struck out" in the process and

could not proceed IFP without showing that he was in imminent danger of serious physical injury. *See* 28 U.S.C. § 1915(g). Undeterred, White continued filing new lawsuits in this District and others by paying the full filing fee for each case up front.[6] Given all of this, the Court finds that monetary sanctions are very unlikely to deter White.

Harsher sanctions are warranted. White has increasingly filed abusive, harassing, and frivolous documents in this case and others. This Court has wasted significant time addressing these filings. Sanctions must also target and curb this misconduct.

In Case No. 16-cv-00948-JPG, White made inappropriate *ad hominem* attacks on the Department of Justice's counsel in Doc. 183. The Court warned him that "[i]n the future, in this and any other case, the Court will summarily strike any . . . filings that contain such inappropriate *ad hominem* attacks and may not allow him to amend the filing." (*See* Doc. 192, pp. 1-2 at n. 1) ("first warning").

In Case No. 18-cv-01682-JPG, White insulted his counsel and the Court in a Motion to Dismiss Counsel filed January 14, 2021. (Doc. 40). He blamed Attorney Osman for misleading him. (*Id*. at ¶ 1). He described the Court's Order (Doc. 102) revoking his IFP status as "a fraudulent Order" resulting from the "Court's longstanding habit of deliberately misapplying the law." (*Id*.). White added that "this Court is ill-disposed to the niceties of the law and evidence." (*Id*. at ¶ 2). Finding these statements "inappropriate, gratuitous, and abusive," the Court again warned White to "refrain from filing any more pleadings containing language that is abusive toward the court,

---

[6] *White v. Executive Office of U.S. Attorneys, et al.*, No. 18-cv-00841-RJD (S.D. Ill. April 9, 2018) (denied IFP April 16, 2018 and $400.00 fee paid April 26, 2018); *White v. United States*, No. 18-cv-01682-JPG (S.D. Ill. Sept. 4, 2018) ($400 fee paid Sept. 17, 2018); *White v. Dept. of Homeland Security, et al.*, No. 19-cv-00210-DWD (S.D. Ill. filed Feb. 15, 2019) ($400 fee paid March 7, 2019); *White v. True*, No. 19-cv-00418-JPG (S.D. Ill. filed April 15, 2019) ($400 paid May 2, 2019); *White v. Federal Bureau of Prisons*, No. 20-cv-00751-NJR (S.D. Ill. filed July 31, 2020) ($400 paid Aug. 14, 2020); *White v. Collis, et al.*, No. 20-cv-01117-JPG (S.D. Ill. filed Oct. 22, 2020) ($400 paid Nov. 17, 2020).

other parties, or others" and warned him that "such filings will be STRICKEN and returned to him without any further action by this Court."  Moreover, he may be subject to sanctions "that include, but are not limited to, a monetary fine and/or a filing restriction for further abusive or frivolous filings."  (Doc. 41) ("second warning").

In Document 105 filed in this case on January 19, 2021, White responded to the show cause order in a harassing and inappropriate manner.  By way of example only, White described the Court's Order at Doc. 102 as a "nutty Order."  (Doc. 105, p. 1).  He also stated, "[T]he Court's Order is based upon a really nutty misapplication of the law, as well as the fabrication of factual statements." (*Id*.).  He then added:

> The fact is, Judge Gilbert, that you are too willing to accuse other[s] based on no evidence and too little willing to review the law and the evidence and apply them in the even-handed way required of a federal judge.  You do this in case after case after case and you don't just do it to me, and I'm tired of it.

(*Id*. at 2).  The response was stricken, and White was given additional time to submit an appropriate response.

In Document 108 filed in this case on February 9, 2021, White targeted counsel, the Court, and the federal court system more broadly, as follows:

> ". . . My intent in not providing corroborating information was to cause the United States to believe that I could not provide such evidence.  This, I expected, would cause someone like Ms. Garrison to appear in front of a fool of a federal judge, someone who would copy whatever she had to say as a 'factual finding' without any proof, and, once such an order was entered finding that no such confession occurred, I would produce corroborating evidence and again expose the federal justice system for the stupid, corrupt, and, arrogant, joke that it is."

(Doc. 108, ¶ 2).  This language resulted in a third warning against White to "refrain from making abusive, gratuitous, and/or threatening comments directed at *anyone* in his filings."  (Doc. 110, p. 4).  He was clearly warned that any more documents containing such language would be stricken

12

and returned to him without any further action by the Court. (*Id*.). He would also face sanctions that include, but are not limited to a monetary fine and/or a filing restriction. (*Id*.).

In Document 109 filed in this case on February 11, 2021, White stated: "Judge Gilbert informed me in *United States v. White* SD Ill. Case No: 16-cv-683 that he feels that he was 'intentionally misled' by my IFP application. He is incorrect; the only thing that he has been intentionally misled by is the Devil and his own imagination." (Doc. 109). The document was stricken by the Court. (Doc. 111). No action was taken on the motion. (*Id*.).

On March 12, 2021, White received a fourth warning and became the subject of a temporary filing restriction in *White v. United States*, No. 20-cv-1117-JPG (S.D. Ill.) (Doc. 7), after he filed documents containing sensitive information, including the home addresses, phone numbers, and other personal identifying information of public servants. That case is the subject of a separate and independent filing restriction.

Against this backdrop, the Court now finds that additional sanctions are necessary to curb White's abusive filings in this District. Monetary sanctions, repeated warnings, stricken pleadings, and temporary filing restrictions have had little impact on him. *See Alexander v. United States*, 121 F.3d 312 (7th Cir. 1997) (finding that courts have inherent authority to protect themselves from vexatious litigation and imposing a $500 fine and entering a filing ban pursuant to *Support Systems International, Inc. v. Mack*, 45 F.3d 185 (7th Cir. 1995)); *In re Mann*, 229 F.3d 657, 659 (7th Cir. 2000) (warning *pro se* litigant that abusive and disparaging language could result in sanctions); *Tidwell v. Clendenin, et al.*, No. 16-cv-00384-SMY (S.D. Ill.) (Doc. 43) (imposing fine and filing restriction to prevent further frivolous and harassing filings). White shall now be subject to the two-year filing restriction set forth in the Disposition below.

## Disposition

**IT IS ORDERED** that Attorney Osman's Motion Waiving Attorney Fees and Requesting Reimbursement of Costs of **$35.50** (Doc. 103) is **GRANTED**.  White is **ORDERED** to remit payment of the **$35.50** directly to Attorney Osman on or before **October 25, 2021**.

**IT IS ORDERED** that the Order Granting Motion to Dismiss and Revoking In Forma Pauperis Status (Doc. 102) is modified as follows: White's Motion to Dismiss Counsel (Doc. 99) is **GRANTED**.  Attorney Blane Osman is **RELIEVED** from any and all further obligations to represent White in this case.  Attorney Osman shall be **EXEMPT** from *pro bono* appointments made from the District's Pro Bono Panel for the next five (5) years.

**IT IS ORDERED** that, in addition to revocation of White's *in forma pauperis* status and dismissal of this action with prejudice, White is subject to the below **FILING RESTRICTION**.

## FILING RESTRICTION

William White is **SANCTIONED** with a filing restriction in this District that takes effect immediately and continues for the next two years.  During this time period, White is prohibited from filing any new civil actions in this Court, and the Clerk of Court is **DIRECTED** to **RETURN UNFILED** all civil pleadings he submits for filing in a pending or new action.  This filing restriction does not extend to a Notice of Appeal from this Order (which shall result in imposition of an additional $505.00 filing/docketing fee), to the filing of any Petition for a Writ of Habeas Corpus, or to pleadings filed as a defendant in another criminal or civil case.  *See Mack*, 45 F.3d 183; *Newlin v. Helman*, 123 F.3d 429, 436 (7th Cir. 1997).  However, any papers submitted to the Court by White while this filing restriction is in place must be accompanied by a copy of this Order.  Moreover, all habeas corpus filings will be summarily dismissed thirty days after filing, unless otherwise ordered by the Court.  In accordance with precedent, White may seek

modification or rescission of this Order by filing a motion in this Court *no earlier* than two years from the date of entry of this Order.  **White is WARNED that any efforts to evade the filing restriction shall result in the imposition of additional monetary and/or other sanctions.**

This action is **DISMISSED with prejudice**; the Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:  9/27/2021**                                    s/ J. Phil Gilbert
                                                                              **J. PHIL GILBERT**
                                                                              **United States District Judge**